**B. F. GOODRICH, Petitioner,**

**v.**

**Andy HILTON and Workers' Compensation Court, Respondent.**

**No. 55826.**

Supreme Court of Oklahoma.

Sept. 29, 1981.

---

**3.** 59 O.S.1971, §§ 1330–1333, and 59 O.S.Supp. 1980, § 1332.

Wallace & Owens, Inc. by Robert S. Gee, Miami, for petitioner.

Frank Greer and Joseph E. Mountford, Miami, for respondent.

HODGES, Justice.

This Workers' Compensation case involves the award of 20% permanent partial disability for a knee (right leg) injury to claimant, Andy Hilton. The only issue presented is the extent of the impairment.

The petitioner, B. F. Goodrich, asserts that the medical evidence is insufficient to support the award.

The principal contention is that the trial court erred when it found that claimant's medical evidence need not comply with the A.M.A. Guides to the Evaluation of Impairment (Guides). Goodrich contends that the claimant had no impairment as a result of the accidental injury based on the Guides. The trial court held that claimant's injury was specifically excluded by 85 O.S.Supp. 1978 § 3(11)[1] and Court Rule No. 23 from the imposition of the Guides. No contention is made by Goodrich that injury to the knee is outside the purview of 85 O.S.Supp. 1978 § 22(3), which delineates compensation for disability to the leg. The only issue presented is the extent of the permanent partial impairment to claimant's right leg. It is asserted by the employer that failure to utilize the objective measuring standards of the Guides renders the medical report incompetent, and, therefore, the order of the trial court is based on insufficient medical evidence.

The claimant sustained an accidental injury when he stepped on a tractor forklift. Because there was oil and hydraulic fluid on the tractor, his foot slid off. His right knee was injured, and surgery was necessary. As the result of the injury, he suffered from occasional stiffness and swelling of the right knee. The claimant has worked at his regular employment without restriction since his recuperation.

The dispute arose when claimant's physician stated in his medical report that claimant sustained 40% impairment to his right leg as a result of the accident; and that he

---

1. It is provided by 85 O.S.Supp.1978 § 3(11): " 'Permanent impairment' means any anatomical or functional abnormality or loss after reasonable medical treatment has been achieved, which abnormality or loss the physician considers to be capable of being evaluated at the time the rating is made. Any examining physician shall evaluate impairment in substantial accordance with such guides to the evaluation of permanent impairment as have been officially approved by a majority of the Workers' Compensation Court. These guides may include but shall not be limited to, the 'Guides to the Evaluation of Permanent Impairment' pub-

lished in 1971 by the American Medical Association. The Court shall be empowered to add, delete or revise its guides as its majority sees fit. The Court shall arrange for appropriate notice and distribution of those guides which it adopts, deletes or revises. These officially adopted guides shall be the basis for testimony and conclusions with regard to permanent impairment with the exception of paragraph 3 of Section 22 of this title, relating to scheduled member loss. "In any case where the examining physician deviates from said guides the basis for said deviation shall be stated."

did not use the Guides in forming his opinion. The physician who examined the claimant for the employer found no impairment based on the Guides. A third physician was appointed by the court pursuant to 85 O.S.Supp.1977 § 17[2] and Rule 22 of the Workers' Compensation Court. The appointed physician found 10% permanent partial disability.

A plain reading of the statute reveals that the Guides shall be the basis for testimony and conclusions concerning permanent impairment, with the *exception* of 85 O.S.Supp.1978 § 22(3). We find that this case hinges on a matter of statutory construction, and that the exception of permanent partial disability to a scheduled member under § 22(3) is clear and unambiguous. There is no room for construction or provision for further inquiry when the Legislature plainly expresses its intent.[3]

The measuring standards of the American Medical Association Guides to the Evaluation of Impairment do not apply to 85 O.S.Supp.1978 § 22(3) relating to scheduled member loss. Injury to the knee is within the ambit of § 22(3).

AWARD SUSTAINED.

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

**2.** It is provided by 85 O.S.Supp.1977 § 17 in pertinent part:

"A. The determination of disability shall be the responsibility of the Court. Any claim submitted by an employee for compensation for permanent disability must be supported by competent medical testimony which shall include an evaluation by a physician stating his opinion of the employee's percentage of permanent impairment and whether or not the impairment is job-related and caused by the accidental injury or occupational disease. . . .

"When the medical testimony to be introduced on behalf of the employee and employer is divergent by more than thirty percent (30%) as to the extent of permanent impairment of the employee or when there is any disagreement in the evidence as to the medical cause of the medical permanent impairment, any party may challenge such testimony by giving written notice to all other parties and to the Administrator. Upon receipt of such notice, the challenging party and the party challenged shall

select a third physician who shall be afforded a reasonable opportunity to examine the employee together with all medical records involved and any other medical data or evidence that he may consider to be relevant. The third physician shall issue a verified written report on a form provided by the Administrator to the Court stating his finding of the percentage of permanent impairment of the employee and whether or not the impairment is job-related and caused by the accidental injury or occupational disease.

"B. When the challenging party and the challenged party are for any reason unable or unwilling to agree upon the appointment of a third physician within ten (10) days, the Court shall appoint the third physician. . . ."

**3.** *Johnson v. Ward,* 541 P.2d 182, 185 (Okl. 1975); *McVicker v. Bd. of County Commr's. of Caddo County,* 442 P.2d 297, 302 (Okl.1968); *Special Indemnity Fund v. Harold,* 398 P.2d 827 (Okl.1965).