**L. E. JONES DRILLING COMPANY and Mid-Continent Casualty Company, a corporation, Petitioners,**

v.

**Richard L. HARRIS and the State Industrial Court, Respondents.**

**No. 41036.**

Supreme Court of Oklahoma.

June 15, 1965.

W. A. McWilliams, Oklahoma City, for petitioners.

Harry R. Palmer, Jr., Oklahoma City, Charles R. Nesbitt, Atty. Gen., for respondents.

IRWIN, Justice.

This is an original proceeding by L. E. Jones Drilling Company, employer, and its insurance carrier, Mid-Continent Casualty Company, who will be referred to as petitioners, for a review of an order of the State Industrial Court awarding compensation to Richard L. Harris, claimant.

The primary question to be determined is whether there is competent evidence to support the award to the claimant on the basis of 10 per cent permanent partial disability to his body as a whole as a result of an injury to his head.

The record discloses that on April 4, 1961, claimant sustained an accidental personal injury arising out of and in the course of his employment when a steel platform, weighing approximately 1,000 pounds and being raised to the side of a drilling rig, slipped and struck claimant under the left side of his chin, rendering him unconscious and breaking off two front teeth. He was immediately removed to a hospital in Duncan, Oklahoma, where he was x-rayed and treated several times by Dr. R. Claimant then was referred to Dr. N, an eye specialist in Wichita Falls, Texas, by the carrier. From Dr. N, the carrier sent claimant to Dr. L, in Oklahoma City and from Dr. L to Dr. B, in Oklahoma City. Claimant's attorney referred him to Dr. P, who examined claimant and prescribed medication.

Claimant testified he had lost eight days from his job because of the injury; that he had been paid temporary total compensation for that time; that he had his teeth fixed and that the company paid for that; that he still had headaches and that his "eyes move in reading"; that he had not had any difficulty on the job after the first two days he returned to work; that his salary was the same at the time of the hearing as it was at the time of the injury and that he had worked steadily since the accident; that glasses prescribed for him by Dr. N, helped when he read or drove his car, but that he did not need them on the job.

The written reports of Dr. N, dated July 6, 1961, November 22, 1961, and August 1, 1963, were introduced into evidence on behalf of claimant. Dr. N stated that he examined claimant some two months after the accident and found "a marked imbalance of his eye muscles which will require lenses to correct"; that "there is no test known to medical science by which an estimation can be made as to the percentage of loss of eye function from a muscle imbalance or impairment"; that in his opinion claimant "will have some inconveniences from his eye muscle impairment even though he wears the muscle glasses" and that since claimant had never had this difficulty prior to his injury "it would seem it was connected with the injury".

Claimant also introduced into evidence the written reports of Dr. P dated November 8, 1963, and February 12, 1964, wherein he stated he examined claimant on November 6, 1963, and felt "this man suffered a concussion of the brain, which has resulted in organic healing, but which persists in the form of tension phenomena which caused the symptoms which he had to continue"; that he prescribed treatments for claimant to "alleviate the sequela of his accident" and saw claimant again on November 22 and December 13, 1963, when he found claimant had improved "but continues to suffer frontal headaches" and "quivering and soreness of the eyes"; that in his opinion, claimant sustained a 25 per cent permanent partial disability to the body as a whole as a result of the accident.

Petitioners introduced into evidence the written reports of Dr. L dated May 25, 1961; Dr. R's form reports dated April 20, 1961, May 2, 1961 and May 8, 1962; the report of Dr. B dated December 18, 1961; the report of Dr. S dated March 13, 1964, and a form report dated November 17, 1961, by Dr. N whose other reports had been introduced by claimant.

Dr. L stated he examined claimant on May 25, 1961, because of the following complaints: "(1) Headache, (2) Soreness of right side of chin, (3) Blurring of vision in

left eye"; that in his opinion "this patient has sustained a very minor concussion and possibly some chipped teeth as a result of his injury * * *. He should have no permanent disability."

Dr. R stated he pronounced claimant ready to resume work on April 7, 1961, and discharged him as cured on April 17, 1961; that in his opinion claimant suffered no permanent disability.

Dr. B stated his examination of claimant on December 8, 1961, revealed no muscle imbalance, that his eyes were completely normal, and that the injury had no effect on claimant's eyes whatsoever.

Dr. S said it was his opinion that there "are no objective residuals from the injury sustained in 1961, although the subjective complaint of headache and anxiety does persist."

Dr. N's report to petitioners dated November 17, 1961, showed his diagnosis to be "marked imbalance of eye muscles. Will require glasses to correct"; his prognosis was that claimant would have "possibly permanent" disability because "muscles still 7 degrees shy."

The question submitted to the trial judge was the percentage of permanent disability, if any, sustained by claimant. He found claimant to have sustained 10 per cent permanent partial disability to the body as a whole and also ordered petitioners to pay claimant $100.00 for the loss of the two teeth. The award was affirmed on appeal to the court en banc.

Petitioners do not question the correctness of the order pertaining to the teeth but contend that the part of the order finding claimant sustained permanent disability to the body is erroneous and "not sustained by any evidence." Petitioners state claimant's right to compensation is governed by the "Other Cases" provision of 85 O.S.1961, § 22 which provides in part as follows:

"Other Cases: In all classes of disabilities, excluding those heretofore referred to in subdivision 3, *which disabilities result in loss of use of any portion of an employee's body * *."* (Emphasis ours.)

Petitioners contend it is incumbent upon claimant to prove that he suffered a disability which resulted in the loss of use of some portion of his body and this he failed to do; that "loss of use" as used in the "Other Cases" provision has not been defined by this Court; that the only complaints claimant has "is that he has headaches and his eyes hurt" and that "his complaints of fear, anxiety and pain and suffering" is not compensable under the Workmen's Compensation Law.

■ We are of the opinion that it is not necessary for an injured employee to prove that he suffered a disability which resulted *in the loss of use of some portion* of his body before entitlement to an award under the provision of "Other Cases" of Sec. 22, supra. Such construction would be tantamount to a holding that such provision was applicable only to the loss of use of a *portion* of the body, not specifically provided for by other provisions of Sec. 22, supra, and would not be applicable to a disability which affected the body as a whole. The "Other Cases" provision specifically prescribes *any portion* of the employee's body, not to *some* or a *certain* portion, and *any portion* would not only necessarily include *some* or a *certain* portion, but all of the employee's body. In other words, if an employee suffers a disability which results in the loss of use of the body as a whole, such disability falls within the provision of the "Other Cases" provision of Sec. 22, supra, which prescribes the "loss of use of any portion of an employee's body."

Such construction was, in effect, recognized in Service Pipe Line Company v. Cargill, Okl., 289 P.2d 961. In that case the evidence disclosed claimant sustained an injury to his back resulting in some disability to his person and the award was made under the "Other Cases" provision of Sec. 22, supra. In that case the employer argued that under Sec. 22, supra, compensation is allowed only for disability sustained to the

portion of the body injured and claimant sustained only a back injury; that there was no evidence of an injury to the body as a whole; and without such evidence there was no medical evidence to sustain the award. In response to this contention we said:

"We see no merit to this contention. If in the opinion of the medical experts the injury to respondent's back resulted in permanent partial disability to his body as a whole, they had a right to evaluate his disability on that basis."

In the instant action the trial tribunal found claimant had sustained an accidental injury to his head and as a result of said injury, claimant sustained a 10 per cent permanent partial disability to his body. This finding is in harmony with the finding in the Service Pipe Line Company case, supra, and with our previous decision wherein we have held that a disability from a psychiatric condition resulting from an accidental injury is compensable.

In Wade Lahar Const. Co. v. Howell, Okl., 376 P.2d 221, in the first paragraph of the syllabus of that case we held:

"Disability from post-traumatic neurosis produced by brain concussion and shock sustained in an accidental injury is compensable under the Workmen's Compensation Act."

In this connection see also, Rialto Lead & Zinc Co. v. State Industrial Commission, 112 Okl. 101, 240 P. 96, 44 A.L.R. 494; Seismograph Service Corp. v. Costy, Okl., 317 P.2d 215, 218; Woodward & Company v. State Industrial Commission, Okl., 349 P.2d 638.

Dr. P for claimant and Dr. L for petitioners both agreed claimant suffered a brain concussion at the time of his accident; Dr. P stated there was "no gross objective deviation" from his neurologic studies of claimant but that claimant "does have considerable manifestations of tension both pyschologically and neurologically" which "persist in the form of tension phenomena which caused the symptoms (headaches and quivering and soreness of the eyes) which he had to continue." Dr. S for petitioners stated that on the basis of his findings "it is my opinion that there are no objective residuals from the injury sustained in 1961, although the subjective complaint of headache and anxiety does persist."

We think the testimony of Drs. P, L and S, coupled with that of Dr. N, who stated claimant had "marked imbalance of the eye muscles", prescribed glasses for correction and said the condition would be permanent, is sufficient to sustain the finding of the trial court that as a result of the accident to claimant's head, he has sustained a 10 per cent permanent partial disability to the body as a whole.

Petitioners also maintain that the consequences suffered by claimant from his accident "does not affect his earning capacity."

We find the case of Service Pipe Line Company v. Cargill, supra, disposes of this issue. In that case we held:

"Under the 'other cases' provision of 85 O.S.1941 § 22, it is not necessary to establish loss of wage earning capacity, and the State Industrial Commission is authorized to award percentage of total disability disclosed by the medical testimony."

Finding the record free from any errors of law and the order of the State Industrial Court amply supported by the evidence the award is sustained.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur.