**Mary Ruth DAUGHERTY, Petitioner,**

v.

**ITT CONTINENTAL BAKING COMPANY et al., Respondents.**

**No. 49067.**

Supreme Court of Oklahoma.

Dec. 21, 1976.

Manners, Grennan & Cathcart, Oklahoma City, for petitioner.

A. G. Crowe, Oklahoma City, for respondents.

BERRY, Justice:

This is original proceeding to review order of Industrial Court sustaining demurrer to claimant's evidence by employer and insurance carrier, hereafter referred to as respondents. Respondents stipulated that claimant was employed by respondent baking company at time of alleged injury; she was engaged in a hazardous occupation and, if injury was compensable, she was entitled to maximum rate of compensation. Respondents denied compensability of psychiatric injury claimant alleged she sustained in her Form 3, filed April 25, 1975.

Claimant testified she had been in charge of respondent employer's Lawton Thrift Store in Lawton, Oklahoma, since 1967. On January 15, 1975, the thrift store was visited by Jim Noel, company sales manager for thrift stores, claimant's immediate superior, and Lester Cracraft, Jim Noel's superior from Kansas City. The visit lasted an hour and a half and was unannounced. Claimant, Cracraft and Noel went to back of store to an office. Cracraft complained that the Lawton store was not up to par on sales and claimant would have 3 weeks to get sales up. And Cracraft said to claimant:

"You know that Jim Noel doesn't have the right to fire you or the authority to fire you, neither do I have the right to fire your damn ass."

Later Cracraft went to the front of store where customers were shopping and remarked that store arrangement looked like "hell" to him.

Claimant testified she was hurt very deeply by remarks made by Cracraft. They were made in front of customers and Noel [whom she described as very religious] and she had never been talked to that way before.

Claimant testified that on the ensuing February 10, 1975, Noel came to the store and produced a paper and requested she sign a letter of resignation; there had been a meeting and they were wanting her to resign. She testified " * * * it seemed like a nightmare had hit me." Noel told her to think about it and he would be back Wednesday [2 days later] for her answer. On Friday he called and claimant told him she could not sign the letter of resignation because she had not "done anything to sign it for."

Claimant was not scheduled to work again until the following Monday. On that morning she woke up screaming and her husband was shaking her. Sometime during the following week she realized she was in the hospital and under care of Dr. D, a psychiatrist. He put her on some medication and she thereafter gained 50 pounds. Dr. D sent her to Dr. P, a psychiatrist in Oklahoma City. She was still under care by Dr. D at time of hearing. She was on medication which had been changed just the previous Friday because she did not sleep at night. Claimant testified she did not think she would ever be able to meet the public again; her nerves were "shot" and her husband had had a heart attack. She said that when Noel had handed her that paper and she read it, "it just seemed like my whole world fell part." She had never before been to a psychiatrist.

Claimant's witness, Dr. P, testified she had an obsessive-compulsive personality; "she had developed a philosophy of life that if she performed well and did her duty and stayed on her toes * * * and made everybody happy and offended no one, that the world which she took care of in this manner would take care of her." Dr. P also testified:

" * * * I think the disillusionment which she suffered and the frustration which she felt at being, well, let's say asked to resign because of obvious disapproval, disrupted her formula of life and her living and she was left * * * left her sort of waving in the wind, if you will, it was a rather violent wind."

Dr. P further testified:

" * * * It is as traumatic to jerk the rug from under a person emotionally through disillusionment as it is to jerk the rug out from under someone physically, and sometimes more traumatic and damaging."

Dr. P said claimant was temporarily totally disabled; that her disability was triggered by the events surrounding the request for her to resign and she was in need of further treatment. He said it was an emotional injury.

Claimant then called Jim Noel to testify. He testified claimant was conscientious but did not accomplish the things "we desired"; that Cracraft was a strong disciplinarian and liked to see action. Claimant

did not follow orders. He described claimant's duties and said she had some management responsibilities.

Claimant called Rose Wisner, a character witness, who also testified that she was a customer of the thrift store and had on occasion "found Mary very, very busy with no help" and witness helped her to sack bread, etc.

Trial court allowed all parties to amend pleadings to conform to proof, including denial by respondents that claimant sustained an accidental injury arising out of and in the course of her employment on January 15, 1975.

Respondents demurred to claimant's evidence on grounds claimant failed to show she had sustained an accidental physical injury, or that claimant suffered from an illness set out by statute and failed to show post-traumatic neurosis following an injury.

In opposition claimant asserted she had suffered an accidental injury arising out of and in the course of her employment with ITT Continental Baking Company, her injury being one of a psychiatric nature.

Trial court said a question of law was presented as to "whether a nervous disorder caused by a mental stimulus is covered under Oklahoma Workmen's Compensation Laws." Respondents' demurrer was sustained with exception allowed claimant.

The only question presented for review is whether claimant established that she had, in the course of her employment with respondent baking company, sustained an accidental injury for which she is entitled to compensation under Oklahoma's Workmen's Compensation Law, 85 O.S.1971 § 1 et seq.

■ We first note Industrial Court has authority to sustain a demurrer to claimant's evidence. *Rose v. Champlin Refining Co.,* 184 Okl. 203, 86 P.2d 317. Also, in considering a demurrer to claimant's evidence, Industrial Court is not required to follow rule applied in jury cases; it need not consider as true all evidence favorable to claimant, with all reasonable inferences to be drawn therefrom, and disregard all evidence in favor of respondent. *Hogue v. Smith,* Okl., 393 P.2d 855.

■ In *Keeling v. State Industrial Court,* Okl., 389 P.2d 487, claimant, a seamstress, suffered a "nervous breakdown" from nervousness and strain caused by the position in which she was compelled to sit at her work. We sustained Industrial Court's order denying compensation and held that a disease of body or mind arising during employment, with nothing more, is not within Workmen's Compensation Act.

*Vernon v. Seven-Eleven Stores,* Okl., 547 P.2d 1300, was a case similar to the instant case. Claimant had, from time to time been required by his employer to undergo polygraph tests. He was a store manager. He apparently had always passed the tests. But, at time in question some merchandise was missing and claimant was required to take another polygraph test. The next day he was advised that he did not pass the test, which meant automatic discharge. Claimant was very upset and became more upset when he was denied unemployment compensation.

Psychiatric treatment followed. Claimant's doctor testified that the cause of claimant's difficulties was the polygraph test and events thereafter; he had 50% permanent partial disability as a result. Trial court found, affirmed by en banc appeal, that claimant had not sustained accidental injury as defined by the Act. 85 O.S.1971 § 1 et seq. We held that the alleged injury is not included in the Act which enumerates injuries for which compensation may be awarded and the findings of Industrial Court were sustained by substantial evidence and sustained order denying compensation.

Order denying compensation sustained.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, LAVENDER, BARNES and SIMMS, JJ., concur.

DOOLIN, J., dissents.