**OKLAHOMA STATE PENITENTIARY and the State Insurance Fund, Petitioners,**

v.

**Toby June WEAVER and the Workers' Compensation Court, Respondents.**

**No. 75315.**

Court of Appeals of Oklahoma, Division No. 1.

Feb. 19, 1991.

Rehearing Denied April 2, 1991.

Anne Catherine Pittman, Oklahoma City, for petitioners.

Lew Gravitt, Oklahoma City, for respondents.

## MEMORANDUM OPINION

PATRICIA D. MacGUIGAN, Judge:

In December, 1985, a riot occurred at Respondent Oklahoma State Penitentiary at McAlester (Employer) at which facility and time Respondent Weaver (Claimant) was employed. As a result of the incident, Claimant sustained injury to her right arm with psychological overlay. The Workers' Compensation Court awarded Claimant temporary total disability benefits therefor. Claimant subsequently initiated an additional claim based on injury to her neck, and Employer petitioned the trial court for a hearing on permanent partial disbility. After hearing, the trial court found Claimant sustained no compensable injury to her neck, and suffered no permanent partial disability to her right arm; however, the trial court determined Claimant to be 15% permanently partially disabled due to post traumatic stress syndrome. Employer seeks review of this order.

■ Employer argues the evidence herein does not support the trial court's order, asserting Claimant failed to proffer evidence relating her psychological problems to the injury of her right arm. Employer cites, inter alia, *Fenwick v. Oklahoma State Penitentiary*, 792 P.2d 60 (Okl.1990), for the proposition that physical injury must be present in order for a claim for "psychological overlay" to be compensable, contending that the evidence reflects that Claimant's psychological problems arise not out of any injury she sustained, but out of the riot in which Claimant was involved.

Employer misconstrues the holdings in *Fenwick* and related cases. We note the operative language to be adduced therefrom is that mental or psychological problems are not compensable under the Workers' Compensation Act in the absence of any accompanying physical injury; i.e., that some physical injury must also be suffered. *Fenwick* 792 P.2d at 62, 63. This does not, however, inevitably lead to the conclusion that the psychological injury must flow from the physical injury; rather, the psychological injury must be "accompanied" by a physical injury—both arising from the same event.

■ The cases cited by Employer involve incidents in which a claimant suffered either mental stress alone or suffered physical symptoms but no physical injury. Under such circumstances, the Court has consistently held such problems not compensable under the Act. See, e.g., *Fenwick*, 792 P.2d at 60. In the instant case, however, Claimant sustained both a psychological injury and a physical injury, both of which arose from the single event of the riot. Unlike the facts in Fenwick, and contrary to Employer's argument, the evidence shows Claimant's psychological problems were in fact accompanied by physical injury.

■■ In a related argument, Employer asserts that Claimant did not, in fact, sustain a physical injury, pointing to the fact that the trial court's order found Claimant sustained no permanent partial disability to her right arm. We find this proposition wholly without merit. The record reveals that Claimant was initially found to have sustained an accidental injury to her right arm which rendered Claimant temporarily totally disabled with psychological overlay. Although we note the trial court determined Claimant did not suffer a permanent disability to her right arm, we know of no

authority which requires that Claimant be rendered permanently disabled in order to recover for accompanying psychological injury, nor does Employer cite any authority therefor. On the contrary, once it has been determined that a claimant suffered a compensable injury within the coverage of the Workers' Compensation Act for purposes of temporary total disability, that adjudication is binding and conclusive of the issue in subsequent proceedings. *Waller v. Scheduled Truckways,* 775 P.2d 298 (Okl. 1989). We thus find no error by the trial court in awarding Claimant benefits based on permanent partial disability sustained due to post traumatic stress syndrome.

Employer next attacks Claimant's medical evidence as lacking the necessary probative value to support the trial court's order determining Claimant to be permanently partially disabled. Specifically, Employer argues that Claimant's examining physician's narrative medical report did not adhere to the requirements of 85 O.S.1985 Supp. § 3(11), and Rule 20, Rules of the Workers' Compensation Court, 85 O.S.1981, Ch. 4, App., in that said report confirms that the examining physician failed to conduct his evaluation of Claimant in conformity with the *AMA Guides for Evaluation of Permanent Impairment* (hereinafter the Guides).

 The Guides must be the basis for testimony and conclusions concerning permanent impairment, *Goodrich v. Hilton,* 634 P.2d 1308, 1310 (Okl.1981); thus, a report made without substantial compliance with the Guides is not competent. *Special Indemnity Fund v. Stockton,* 653 P.2d 194 (Okl.1982). In the instant case, Claimant's examining physician states that his narrative medical report is in substantial compliance with the Guides. However, Employer argues that § 14.3 of the Guides requires a physician evaluating psychological impairment to observe the patient carrying out activities in four areas: 1) daily living, 2) social function, 3) concentration persistence and pace, and 4) adaptive functioning. Employer points out that Claimant's exam-

ining physician states in the narrative medical report that "[it] is simply not possible to observe an individual in all of the posture and categories set out in [the Guides] during the course of an hour and a half or two hour history taking and examination."

We find that § 14.3 of the Guides does not require the examining physician to observe the patient in the areas above-described; rather, the Guides require severity of psychological impairment be assessed in terms of functional limitations on activities in the specified four areas. Further, § 14.2 of the Guides states that information from both medical and non-medical sources may be used to obtain detailed descriptions of the patient's activities in the four areas, and such information may be provided by anyone having knowledge of the patient's functional limitations.

Under the Guides, the presence and severity of psychological impairment should be documented primarily on the basis of information and reports from other physicians and care-givers, as well as information regarding the patient's functional limitations. See, Guides § 14.2, § 14.3. The medical narrative report in the instant case not only contains a detailed description of Claimant's functional limitations in the four areas above-noted, but also notes test results and the fact that Claimant's examining physician had reviewed the reports of three other physicians who had examined Claimant. Further, the record reflects that Claimant proffered a supplemental report in which the examining physician notes that the Guides require a physician's judgment in rating psychological impairment to be based on clinical impression rather than empirical evidence. See, Guides § 14.5. We thus hold the admission of Claimant's examining physician's reports, which were in substantial compliance with 85 O.S. § 3(11) and Rule 20, was not error. See also, *LaBarge v. Zebco,* 769 P.2d 125 (Okl. 1988); *Perlinger v. J.C. Rogers Construction Co.,* 753 P.2d 905 (Okl.1988).

 On review of orders from the Workers' Compensation Court, the appel-

late courts do not weigh the evidence, but only search the record to determine if the order is supported by any competent evidence. *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okl.1984). The weight and probative value of medical evidence is for the determination of the trial court, which may accept or reject such evidence in whole or in part. See, e.g., *City of Nichols Hills v. Hill,* 534 P.2d 931 (Okl.1976); *Burns v. Yuba Heat Transfer Corporation,* 615 P.2d 1029 (Okl.1980). In this case, there is competent evidence to support the trial court's finding of 15% permanent partial disability due to post traumatic stress syndrome. On review, we may not substitute our judgment for that of the trial court.

SUSTAINED.

ADAMS, P.J., and BAILEY, J., concur.