James F. OSBORNE, Petitioner,

v.

CITY OF OKLAHOMA CITY POLICE DEPARTMENT, Own Risk, and the Workers' Compensation Court, Respondents.

No. 78091.

Supreme Court of Oklahoma.

Sept. 27, 1994.

---

33.   For an explanation of this opinion's backward sweep, see *supra* note 29.

Eric H. Hermansen, Oklahoma City, for petitioner.

Vicki Robertson, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for respondents.

SIMMS, Justice.

Petitioner, James F. Osborne, brought this original proceeding to review the order of the Workers' Compensation Court denying workers' compensation benefits to him. ·The trial judge ruled Osborne did not suffer an accidental injury compensable under the workers' compensation laws of this state when he developed Panic Attack Disorder with Agoraphobia while working as a law enforcement officer for the Oklahoma City Police Department (OKCPD).

The Court of Appeals reversed the order of the trial court holding Osborne was entitled to workers' compensation for the mental disorder he sustained as a result of stress from his work. We granted certiorari to address the issue of whether a mental disorder arising from work conditions but not caused by physical injury sustained at work is an occupational disease compensable under the Workers' Compensation Act (the Act). Because we find Osborne's mental disorder was not a compensable occupational disease, the opinion of the Court of Appeals is vacated and the order of the trial court is sustained. The undisputed facts follow.

Osborne had been working for OKCPD for several years when an undercover narcotics investigation required him to travel to Miami, Florida. While at the Miami airport, Osborne began experiencing weakness, excessive perspiration, dizziness, nausea and strong chest pain. He eventually "passed out" and was treated by the airport emergency personnel for what they thought was a heart attack. Osborne was transported to a Miami hospital where tests were run to determine if he was experiencing a heart attack. Approximately four hours after the episode began, the physicians at the hospital informed Osborne that although his blood pressure was still elevated and heart rate was still rapid, he was not having a heart attack. Rather, the physicians concluded he had probably suffered a severe anxiety panic attack.

Osborne was released from the hospital that evening and traveled back to Oklahoma the next day. He then was examined and treated by a clinical psychologist who diagnosed him as suffering from severe Panic

Attack Disorder with Agoraphobia resulting from stress and fatigue. According to the "Diagnostic and Statistical Manual for Mental Disorders (3d ed. rev. 1987)" (hereinafter referred to as DSM–III–R), a compilation of definitional criteria of mental disorders published by the American Psychiatric Association and used by professional counselors to diagnose patients, Panic Disorder is a mental disorder in which the sufferer experiences unexpected and recurrent periods of intense fear and discomfort. The periods are characterized by many symptoms including those described by Osborne. Agoraphobia is a mental disorder characterized by:

> "[f]ear of being in places or situations from which escape might be difficult (or embarrassing) or in which help might not be available in the event of a panic attack." DSM–III–R at p. 238.

When Agoraphobia is present with Panic Disorder, the sufferers often are so overcome by fear and discomfort, they are unable to venture outside their home, and restrict their travel or need a companion when away from home.

After two-and-a-half months of treatment of psychotropic medications and psychotherapy, Osborne was able to return to work. The medication and psychotherapy were continued during this time. Although he was able to perform his usual duties, Osborne would experience mild panic attacks on occasion.

Four years after the first panic attack, Osborne began demonstrating symptoms of "dyscontrol of his aggressive impulses and behavior" and was unable to safely continue working for OKCPD. Shortly thereafter, Osborne filed this claim for workers' compensation benefits. He then filed an amendment to the Form 3 notice to employer which states that the nature of his occupational disease was "Panic Disorder (DSM III)[1] [with] Agoraphobia". He asserts the mental disorder from which he suffers was brought about by the stress he faced in the course of his employment as a law enforcement officer. In fact, there was evidence that Osborne was experiencing some anxiety symptoms six

months prior to the episode in Miami, but he managed to continue his work despite these early symptoms.

The trial court specifically found that Osborne developed panic disorder accompanied by agoraphobia as a result of job-related mental stress. Further finding Osborne's disability to be mental without any physical injury, the trial court concluded he did not suffer a compensable accidental injury or compensable occupational disease relying on *Fenwick v. Oklahoma State Penitentiary*, 792 P.2d 60 (Okla.1990).

In *Fenwick*, a psychological assistant at a state prison brought a workers' compensation claim alleging he developed depression, generalized anxiety disorder and post-traumatic stress disorder as a result of being held hostage by a prison inmate for over four hours. Because the claimant did not sustain any physical injury, we determined his mental disorders were not compensable under the Act. We based our decision upon the long-standing rule "that disability, either mental or physical, which is not accompanied by a physical injury is not compensable under the Act." 792 P.2d at 63.

This rule is well supported as the following cases have held that mental or psychological injury that does not originate from a physical injury is not compensable. *Keeling v. State Industrial Court*, 389 P.2d 487 (Okla.1964); *Daugherty v. ITT Continental Baking Co.*, 558 P.2d 393 (Okla.1976); and, *Vernon v. Seven–Eleven Stores*, 547 P.2d 1300 (Okla. 1976). *See also Teel v. Tulsa Municipal Employees*, 859 P.2d 1079 (Okla.1993) (affirming *Fenwick*). Likewise, this Court has held that mental or psychological injury which results from or arises out of a physical injury sustained at work is compensable under the Act. *Rialto Lead & Zinc Co. v. State Industrial Comm'n*, 112 Okla. 101, 240 P. 96 (1925); *Wade Lahar Construction Co. v. Howell*, 376 P.2d 221 (Okla.1962); *L.E. Jones Drilling Co. v. Harris*, 403 P.2d 497 (Okla. 1965); *Oklahoma City v. Schoonover*, 535 P.2d 688 (Okla.1975). The Legislature has

1. DSM III apparently refers to the "Diagnostic and Statistical Manual for Mental Disorders (3d ed. rev. 1987)", *supra*.

recognized this rule of law and codified it at 85 O.S.Supp.1992, § 3(7), which provides the definition for "injury". Subsection (c) of § 3(7) reads:

" 'Injury' or 'personal injury' shall not include mental injury that is unaccompanied by physical injury."

Thus, the Act clearly requires a mental injury to be accompanied by physical injury in order to be compensable.

■ Conceding that his mental disorder is not an "accidental injury", Osborne asserts he suffered an "occupational disease" as a direct result of the nature of his work as a police officer and that such occupational disease is compensable. Title 85 O.S.Supp.1990, § 3(10) defines occupational disease as:

"only that disease or illness which is due to causes and conditions characteristic of or peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease."

■ Osborne asserts this definition is broad enough to include such psychological injuries. We do not dispute Osborne's claim that the work of a law enforcement officer is stressful. Indeed, we stated in *Schoonover, supra,* that law enforcement is an occupation which "involve[s] inherent danger creating constant anxiety and apprehensiveness, which result[s] in stress and strain." 535 P.2d at 692. However, this fact alone does not make a panic attack disorder which may result from stress inherent in one's line of work compensable as an occupational disease.

A careful reading of § 3(10) indicates no intent whatsoever by the Legislature for this definition to include mental disorders. The plain legislative intent of this provision was to make the Act cover diseases which workers acquire due to exposure to harmful elements at their worksite, such as asbestosis, brucellosis; and silicosis. There is no language indicating that the definition was to include mental disease. If the Legislature would have intended such, then it would have clearly provided for such in the definition.

Regardless of how Osborne characterizes his mental disorder, the law in Oklahoma has consistently refused to recognize psychological injuries unaccompanied by physical injury as compensable. As noted above, this rule of law was recently reaffirmed in *Teel, supra.* In *Teel,* a credit union clerk filed a workers' compensation claim alleging an injury to her back resulting from diving under a desk during a robbery attempt and a psychological injury (paranoia) resulting from her fear of future robbery attempts. We clarified our holding in *Fenwick* and cemented the law regarding the compensability of psychological injuries by holding:

"the psychological injury must result from or arise out of the physical employment-related injury in order to be compensable." 859 P.2d at 1080 (overruling *Oklahoma State Penitentiary v. Weaver,* 809 P.2d 1324 (Okla.App.1991) which had misinterpreted *Fenwick* ).

If that was not enough to clarify that the rule of law applies to all psychological conditions whether characterized as an injury or an occupational disease, we concluded *Teel* by stating:

"We find that *the mental condition* must arise out of the accidental, work-related injury in order to be compensable." 859 P.2d at 1081 (Emphasis added).

Because Osborne's panic attack disorder with agoraphobia did not arise from a physical injury suffered while on the job, the law of Oklahoma does not allow him to recover workers' compensation. As we noted in *Fenwick,*

"without a legislative mandate, we decline to alter the rule that disability unaccompanied by physical injury is not compensable under the [Workers' Compensation] Act." 792 P.2d at 63.

If psychological injuries, whether characterized as accidental injuries or occupational diseases, are to be compensated where no physical injury was sustained, it is within the Legislature's province to so provide.

For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED, and the order of the Workers' Compensation Court is SUSTAINED.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE and SUMMERS, JJ., concur.

OPALA and KAUGER, JJ., concur by reason of stare decisis.

ALMA WILSON and WATT, JJ., dissent.

OPALA, Justice, concurring by reason of stare decisis.

I concur in the court's opinion *solely* because extant precedent firmly settles the controlling issue in this cause in a manner that is adverse to the position of this compensation claimant. For an explanation of *my individual views,* see *Fenwick v. Oklahoma State Penitentiary,* Okl., 792 P.2d 60, 63–66 (1990) (Opala, V.C.J., dissenting).